DAVID W. SCOFIELD - 4140
**PETERS | SCOFIELD**
*A Professional Corporation*
Suite 115 Parleys Corporate Center
2455 East Parleys Way
Salt Lake City, Utah  84109
Telephone:   (801) 322-2002
Facsimile:    (801) 322-2003
E-Mail:        dws@psplawyers.com

Attorneys for Plaintiff

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **D. A. OSGUTHORPE FAMILY PARTNERSHIP**, a Utah limited partnership,<br><br>Plaintiff,<br><br>-vs-<br><br>**ASC UTAH, INC.**, a Maine corporation; **WOLF MOUNTAIN RESORTS, L.C.**, a Utah limited liability company; the **THIRD JUDICIAL DISTRICT COURT**, an agency of the Judicial Branch of government of the State of Utah; and **THE HONORABLE ROBERT K. HILDER**, in his capacity as a Judge of the Third Judicial District Court in and for the State of Utah,<br><br>Defendants**.** | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER 42 U.S.C. § 1983 AND 28 U.S.C. §§ 2201-02 AND PETITION TO COMPEL ARBITRATION AND STAY STATE COURT PROCEEDINGS UNDER 9 U.S.C. §§ 2-4**<br><br><br>Case No. _____<br><br>Honorable _____ |

Plaintiff complains of defendants and for cause of action alleges as follows:

1.      This is a civil action for declaratory and injunctive relief for violation of the Constitution and laws of the United States.  Plaintiff D.A. Osguthorpe Family Partnership ("The Partnership") seeks a declaration that the actions of defendants ASC

Utah, Inc. ("The Canyons"), Wolf Mountain Resorts, L.C. ("Wolf Mountain"), Third

Judicial District Court (the "Court") and The Honorable Robert K. Hilder ("Judge

Hilder"), in proceeding with litigation between The Canyons and Wolf Mountain

pending in the Court before Judge Hilder, violates The Partnership's rights of

procedural due process of law and substantive due process of law, guaranteed by the

Fourteenth Amendment to the United States Constitution, and additionally that the

actions of all defendants, in so proceeding, subjects, or causes to be subjected, the

Partnership, to a deprivation of its rights, privileges, or immunities secured by the

Constitution and laws.

     2.     This action is also a petition to compel arbitration and to stay proceedings

in the Court under 9 U.S.C. §§ 2-4 as to which five days' advance written notice was

provided to The Canyons and Wolf Mountain.

     3.     This action is also an action for declaratory relief, under 28 U.S.C. §§

2201-02.

     4.     Jurisdiction is based on 28 U.S.C. § 1331 and 1343 and 42 U.S.C. § 1983

and arises under the Fourteenth Amendment.  This court also has supplemental

jurisdiction over the petition to compel arbitration and to stay proceedings in the Court

and the request for declaratory relief under 28 U.S.C. §§ 2201-02 pursuant to 28

U.S.C. § 1367, in that both the petition to compel arbitration and to stay proceedings in

the Court and the request for declaratory relief under 28 U.S.C. §§ 2201-02 are so

related to claims in the action within this court's original jurisdiction that they form part

of the same case or controversy under Article III of the United States Constitution.

     5.     In or about November 1999, The Partnership entered into an agreement

entitled "Amended and Restated Development Agreement For the Canyons Specially Planned Area– Snyderville Basin, Summit County, Utah," a genuine copy of which is attached hereto as Exhibit A [hereinafter the "SPA Agreement"].

6.      The SPA Agreement contains a mandatory binding arbitration clause which states broadly, in pertinent part:

> Binding Arbitration. In the event that the default mechanism contained herein shall not sufficiently resolve a dispute under this Amended Agreement, then ***every such continuing dispute, difference, and disagreement shall be referred to a single arbitrator*** agreed upon by the parties, or if no single arbitrator can be agreed up on, an arbitrator or arbitrators shall be selected in accordance with the rules of the American Arbitration Association and such dispute, difference, or disagreement shall be resolved by the binding decision of the arbitrator. ...

SPA Agreement, at 60, ¶ 5.8.1 (emphasis added) [hereinafter "Arbitration Agreement"].

7.      Based on the Arbitration Agreement The Partnership filed a motion to compel arbitration in The Court on ***September 29, 2010, over four months ago***.  A more detailed procedural history of proceedings in the Court is set forth below. Although that motion has not been finally resolved, The Canyons, Wolf Mountain, The Court and Judge Hilder are preparing to proceed to trial on all issues as to which arbitration is required, on March 8, 2011.

8.      Judge Hilder issued a Ruling and Order (re Arbitration Issues) on November 20, 2010, which was filed on November 22, 2010, [hereinafter "Order Denying Arbitration"], a genuine copy of which is attached hereto as Exhibit B.

9.      In the Order Denying Arbitration, Judge Hilder did not find that the Arbitration Agreement was not valid or was not binding on The Partnership, The Canyons, Wolf Mountain or any other party thereto.  *See* Order Denying Arbitration, *passim*.  Judge Hilder did not find that the SPA Agreement disputes were not arbitrable

issues that were the subject of the Arbitration Agreement.  *See* Order Denying

Arbitration, *passim*.  Judge Hilder further did not find any waiver by The Partnership of

its contractual right under the Arbitration Agreement to have all arbitrable issues

decided by way of arbitration.  *See* Order Denying Arbitration, *passim*.  Instead, Judge

Hilder held that a decision of the Utah Supreme Court entered the day prior to the

Order Denying Arbitration, styled *ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.,* 2010

UT 65, No. 20090059, ___ P.3d ___ (November 19, 2010) [hereinafter "*ASC Utah,*

*Inc.*"], a genuine copy of which is attached hereto as Exhibit C, stood for the proposition

that the Utah courts would not enforce the Arbitration Agreement or The Partnership's

contractual rights under the Arbitration Agreement because two other parties (out of

many) to the Arbitration Agreement, namely The Canyons and Wolf Mountain, had

waived their arbitration rights and litigated with The Court's assistance and resources,

for years, issues that were arbitrable under the Arbitration Agreement.

      10.    Judge Hilder and The Court refused and continue to refuse to enforce any

other party to the Arbitration Agreement's contractual right to mandatory arbitration of

any arbitrable issues on which The Court (and those two out of many SPA Agreement

parties) has spent time and resources.

      11.    Judge Hilder held that Utah public policy prevents The Partnership from

enforcing the Arbitration Agreement in light of the years of litigation between The

Canyons and Wolf Mountain concerning issues required to be arbitrated, because "the

[Utah state law public] policies underlying arbitration have been so violated in this case

that arbitration is not an option open to ***any*** party."  Order Denying Arbitration, at 7

(emphasis added).

12.     The Utah public policy to which Judge Hilder referred was set forth in

*ASC Utah, Inc.*:

> [Utah's] legislature enacted the [Utah Arbitration] Act ***in accordance with
> a public policy that favors arbitration agreements*** as contractual
> agreements between parties not to litigate, *Cent. Fla. Invs., Inc. v.
> Parkwest Assocs.,* 2002 UT 3, ¶ 16, 40 P.3d 599, ***only insofar as they
> serve as "speedy and inexpensive methods of adjudicating
> disputes,"*** *Allred v. Educators Mut. Ins. Ass'n of Utah,* 909 P.2d 1263,
> 1265 (Utah 1996), ***and help reduce strain on judicial resources,*** *See
> Chandler,* 833 P.2d at 358. There is no public policy supporting arbitration
> when it would undermine these goals. "The policies favoring arbitration
> are largely defeated when the right of arbitration is not raised until an
> opposing party has undertaken much of the expense necessary to
> prepare a case for trial." *Id.* at 361.

ASC Utah, Inc., at 7, ¶ 18 (emphasis added).

13.     Judge Hilder therefore deprived The Partnership of its contractual right to

have such arbitrable issues determined in arbitration for the reason that The Canyons

and Wolf Mountain, two other parties to the Arbitration Agreement, have extensively

litigated issues in The Court which are subject of the mandatory arbitration

requirement.  That Utah public policy of rejecting the enforcement of arbitration

agreements unless arbitration serves as a "speedy and inexpensive method[ ] of

adjudicating disputes," and "reduce[s] strain on judicial resources" is in direct conflict

with the Federal Arbitration Act and Congress' intent in enacting it so has previously

been expressly rejected as grounds not to enforce mandatory arbitration agreements by

the United States Supreme Court:

> We conclude, however, on consideration of Congress' intent in passing
> the statute, that a court must compel arbitration of otherwise arbitrable
> claims, when a motion to compel arbitration is made.  ***The legislative
> history of the Act establishes that the purpose behind its passage
> was to ensure judicial enforcement of privately made agreements to
> arbitrate.  We therefore reject the suggestion that the overriding goal
> of the Arbitration Act was to promote the expeditious resolution of***

***claims.*** . . .  This is not to say that Congress was blind to the potential benefit of the legislation for expedited resolution of disputes.  Far from it, the House Report expressly observed:

> "It is practically appropriate that the action should be taken at this time when there is so much agitation against the costliness and delays of litigation.  These matters can be largely eliminated by agreements for arbitration, if arbitration agreements are made valid and enforceable." *Id.,* at 2.

Nonetheless, ***passage of the Act was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered, and we must not overlook this principal objective when construing the statute, or allow the fortuitous impact of the Act on efficient dispute resolution to overshadow the underlying motivation.***  Indeed, this conclusion is compelled by the Court's recent holding in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1 (1983), in which we affirmed an order requiring enforcement of an arbitration agreement, even though the arbitration would result in bifurcated proceedings.  That misfortune,  we noted, "occurs because the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement," *id.,* at 20. *See also id.,* at 24-25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").
>      We therefore are not persuaded by the argument that the conflict between two goals of the Arbitration Act -- enforcement of private agreements and encouragement of efficient and speedy dispute resolution -- must be resolved in favor of the latter in order to realize the intent of the drafters.  ***The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is "piecemeal" litigation,*** at least absent a countervailing policy manifested in another federal statute. [Citation omitted.]  ***By compelling arbitration of state-law claims, a district court successfully protects the contractual rights of the parties and their rights under the Arbitration Act.***

*Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 219-21, 105 S. Ct. 1238, 1242-43, 84

L. Ed. 2d 158, 164-65 (1985) (emphasis added).

14.    The ostensible precept of Utah public policy on which Judge Hilder based

the deprivation of The Partnership's right to arbitration is not found within the plain

6

language of the Utah Arbitration Act, which itself makes arbitration mandatory unless there is **no enforceable agreement** to arbitrate and so is arbitrary.  *See* UTAH CODE ANN. § 78B-11-108.  The same is true of the predecessor to the current Act.  *See* UTAH CODE ANN. § 78-31a-3 to -4 (1999)(mandating arbitration unless the agreement is not valid or enforceable due to "grounds existing at law or equity to set aside the agreement, or when fraud is alleged . . .."  *Id.,* section 3).

15.     The Partnership is entitled to a declaratory judgment that the Federal Arbitration Act, and Congress' intent in passing the Act, preempt the conflicting Utah public policy under the Utah Arbitration Act on which Judge Hilder rested his decision denying a stay of the proceedings and refusing to compel arbitration.

16.     Not only The Partnership, Wolf Mountain and The Canyons (a Maine corporation and Master Developer under the SPA Agreement), are parties to the SPA Agreement, but also, without limitation, individuals, Nevada resident Gregory A. Dean, Virginia resident Dr. Joseph L. Krofcheck, California resident Gerald M. Friedman, and limited liability companies DRM Investment Company, L.C. and Florida resident Parkway Land Development, L.C., each of which signed the SPA Agreement through their then-New York resident managing member, Max Schlopy.

17.     The SPA Agreement governs the development of hundreds of acres in Summit County, Utah, some of which is owned by the out-of-state parties listed above, and includes the development of golf courses, hotels, condominiums and other "destination accommodations" and "resort support housing," commercial uses,  and other facilities, amenities and programs.  SPA Agreement, at 4-5.

18.     The SPA Agreement requires implementation of a transportation plan

which includes "linkages to the Salt Lake City area, including the airport, via various forms of transit for employees and guests." SPA Agreement, at 4-5.

19.     The SPA Agreement requires that "[i]n addition to providing housing opportunities **for seasonal residents and guests**, the RVMA [another party to the SPA Agreement] will construct rental housing and provide financial subsidies that will produce housing units for employees of The Resort and a portion of The Resort Community, as set forth elsewhere in this Amended Agreement." SPA Agreement, at 6 (emphasis added).

20.     The SPA Agreement includes within its scope "Timeshare Estate or Fractional Ownership Interest" residences as to which "[d]uring their interval use, owners may, as prescribed in applicable Condominium Declarations, either occupy the unit, trade the use period for use in an exchange program, or rent the unit to the general public through the rental program operated by the rental manager used by the owners' association."  SPA Agreement, at 13.

21.     The required construction of the golf course must be undertaken, according to the SPA Agreement, "to satisfy the County's [i.e., Summit County, another party to the SPA Agreement] requirement that The Canyons be a **world class, all season resort**."  SPA Agreement, at 29, ¶ 3.2.6 (emphasis added).

22.     The RVMA, another party to the SPA Agreement, is required to

prepare a Resort Competitiveness Analysis at least every five years **to assess the position of The Resort and Resort Community versus other global businesses viewed as competitors**.  Such analysis will be undertaken with two markets in mind– short-term visitors to The Resort and resort property purchasers.  The purpose of the analysis is to **identify trends in the industry and anticipate and implement, when appropriate, programs, amenities and facilities, marketing strategies, real estate offerings, and, other measures to capitalize on such**

> ***trends and attract and retain customers.*** The RVMA will include the
> analysis in the Annual Review in these years that the analysis is
> undertaken.

SPA Agreement, at 38, ¶ 3.3.4(a)(3) (emphasis added).

23.    The SPA Agreement requires that all notices thereunder be sent through

the United States mails, by certified mail, including to addresses in Maine and Texas.

SPA Agreement, at 65-66, ¶ 6.4.

24.    The SPA Agreement expressly provides "that the obligations imposed by

this Amended Agreement are only such as are consistent with state ***and federal law***."

SPA Agreement, at 69, ¶ 6.19.  The SPA Agreement expressly recognizes that some of

its provisions may be subject to invalidation if federal law is inconsistent with the

requirements of the SPA Agreement and states that, in those circumstances, the SPA

Agreement "shall be deemed amended to the extent necessary to make it consistent

with . . . federal law."  SPA Agreement, at 69, ¶ 6.19.

25.    On June 14, 2006, The Canyons filed an action against Wolf Mountain in

the Third District Court, Summit County, State of Utah, styled *ASC Utah, Inc. v. Wolf*

*Mountain Resorts,* Case No. 060500297 (the "297 Case")– a copy of the operative First

Amended Complaint in that action ("ASC FAC") is attached hereto as Exhibit D.

26.    In the 297 Case, The Canyons asserts claims against Wolf Mountain

based on Wolf Mountain's alleged failures to perform under the SPA Agreement.  *See*

The ASC FAC, *passim* (for one example: "Because of Wolf's refusal to convey the golf

course land and to execute the other documents necessary for the golf course

development, on May 3,2006, [Summit County] issued Wolf a notice of default of its

obligations under the SPA Agreement including Section 3.2.6 referenced above. This

notice provided Wolf sixty days (i.e. until July 5, 2006) to cure this default."  ASC FAC, ¶ 42.

27.    On August 8, 2006, Wolf Mountain filed an action against The Canyons, in the Third District Court, Summit County, State of Utah, styled *Wolf Mountain Resorts, L.C. v. ASC Utah, Inc.,* Case No. 060500404 (the "404 Case")– a copy of the operative First Amended Complaint in that action ("WM FAC"), filed after consolidation under the consolidated 297 number,  is attached hereto as Exhibit E.

28.    In the 404 Case, Wolf Mountain asserts claims against The Canyons based on The Canyons' alleged failures to perform under the SPA Agreement.  *See* the WM FAC, *passim* (for one example: "The November 1999 SPA Agreement required that the construction of the golf course be commenced almost immediately and completed by November 2001. The ASC Defendants did not even commence construction by November 2001 much less complete it, thereby adversely affecting the salability of residential properties in the resort area."  WM FAC, ¶ 53.)

29.    The Partnership has never been joined as a party to either the 297 Case or the 404 Case and thus no claims have ever been asserted by it or against it in either of those cases.

30.    On August 11, 2006, The Partnership and others filed an action against Wolf Mountain, in the Third District Court, Salt Lake County, State of Utah, styled *Osguthorpe v. Wolf Mountain Resorts, L.C.,* Case No. 060913348, which was *sua sponte* transferred to Summit County, where it was assigned Case No. 070500018 ("Osguthorpe 1")– a copy of the operative Complaint in that action ("OSG1 Comp.") is attached hereto as Exhibit F.

31.     In the Osguthorpe 1 action, The Partnership asserted claims against Wolf Mountain for breaches of an agreement between those parties and for rescission thereof.  *See* OSG1 Comp., *passim*.  No claims or allegations in the Osguthorpe 1 action related to the SPA Agreement.  *See* OSG1 Comp., *passim*.

32.     In the Osguthorpe 1 action, The Partnership asserted claims against Wolf Mountain for breaches of an agreement between those parties, unrelated to the SPA Agreement, for the use of certain of The Partnership's real property, and for rescission of that agreement.  *See* OSG1 Comp., *passim*.  No claims or allegations in the Osguthorpe 1 action relate to the SPA Agreement.  *See* OSG1 Comp., *passim*.

33.     On September 21, 2007, The Partnership and others filed an action against The Canyons in the Third District Court, Summit County, State of Utah, styled *Osguthorpe v. ASC Utah, Inc.,* Case No. 070500520 ("Osguthorpe 2").

34.     The Canyons sought and received on November 9, 2006, consolidation under Utah R. Civ. P. 42 of the 404 Case into the 297 Case.  Thereafter, The Canyons sought and received on January 18, 2008, over vigorous objection by The Partnership, consolidation under Utah R. Civ. P. 42 of Osguthorpe 1 and Osguthorpe 2 into the 297 Case.   *See* OSG2 Comp., *passim*.

35.     Following such consolidation, on August 25, 2008, The Partnership filed under the consolidated case 297 number its First Amended Complaint, which is the operative complaint in Osguthorpe 2 ("OSG2 Comp."), a genuine copy of which is attached hereto as Exhibit G.  No claims or allegations in the Osguthorpe 2 action relate to the SPA Agreement.  *See* OSG2 Comp., *passim*.

36.     Under Utah law, the consolidation of cases under Utah R. Civ. P. 42 does

not cause any of the consolidated cases to lose "their separate identity in so far as the parties, issues, and proof are concerned."  *T.M. v. B.B. ( In re T.B.),* 2010 UT 42, ¶ 22 & n.8, 232 P.3d 1026, 1030 & n.8 (quoting 1A C.J.S. *Actions* § 217, 690 (1985)).

37.     In the OSG2 FAC, The Partnership asserted claims against The Canyons and Wolf Mountain for breaches of the agreements between it and each of The Canyons and Wolf Mountain, unrelated to the SPA Agreement, for the use of certain of The Partnership's real property, and for rescission of those agreements.  *See* OSG2 FAC, *passim.*  Still, no claims or allegations in the Osguthorpe 2 action related to the SPA Agreement.  *See* OSG2 FAC, *passim*.

38.     The court-ordered cutoff for any further amendment to the pleadings had been set to occur, and later expired, on March 16, 2009.

39.     Following the court-ordered cut-off to amend pleadings, Summit County, on July 29, 2009, purporting to act under the SPA Agreement, issued its ostensible Findings of Fact and Conclusions of Law [hereinafter "Default Notice], declaring, *inter alia*, The Partnership, The Canyons, Wolf Mountain and others to have defaulted under the SPA Agreement.  A genuine copy of Summit County's "Findings of Fact and Conclusions of Law Regarding the Enforcement and Status of the [SPA Agreement]" is attached hereto as Exhibit H.

40.     The Default Notice purports to declare The Partnership in default of the SPA Agreement for failing to enter into an agreement with other parties to the SPA Agreement.  Under the SPA Agreement, the parties were obligated to enter into an agreement on or before February, 2000 regarding the setting aside of land for the golf course, for materially interfering with the golf course development and for failing to

provide deeds for land needed to develop the golf course.  *See* Default Notice, at 45-46.

41.     The Default Notice purported to rescind all of The Partnership's entitlements provided under the SPA Agreement if the default were not cured by October 15, 2009.

42.     All of the alleged defaults against The Partnership were predicated upon and curable only if The Canyons and Wolf Mountain first performed under the SPA Agreement the very issues which had been litigated between them in the 297 Case and the 404 Case for the preceding three years among other defaults of The Canyons and Wolf Mountain.

43.     The Partnership was and continues to be injured by the issuance of the Default Notice, such injury being caused by the defaults of The Canyons, Wolf Mountain, each of them or both of them, and The Partnership therefore has one or more claims arising under the SPA Agreement against both of them, all such claims and the underlying issues relating to such claims, and all other disputes and differences relating thereto, being the subject of the mandatory Arbitration Agreement.

44.     The disputes relating in any way to the SPA Agreement which have been litigated for years by and between The Canyons and Wolf Mountain in the 297 Case and the 404 Case are within the plain language of the Arbitration Agreement in that they are part of "every such continuing dispute, difference, and disagreement" under the SPA Agreement.

45.     No waiver of the right to arbitrate by The Canyons or Wolf Mountain, by virtue of their choice to litigate SPA Agreement related issues between them, can alter,

affect, modify, terminate or cancel the contractual property right owned by The Partnership under the Arbitration Agreement to have all such arbitrable issues determined in arbitration proceedings.

46.     Once the Default Notice was issued, The Partnership had standing and the contractual right to assert its own claims in an arbitration proceeding against The Canyons and Wolf Mountain.  Such contractual rights are property interests arising under state law.

47.     Because The Partnership's claims under the SPA Agreement are premised in their entirety on defaults by The Canyons and Wolf Mountain in their performance under the SPA Agreement, The Partnership has a property right in the Arbitration Agreement under state law, the Federal Arbitration Act exists to enforce that property right, requiring all such disputes and issues to be resolved only through the contractual binding and mandatory arbitration mechanism which The Canyons, Wolf Mountain and other parties to the Arbitration Agreement agreed to pursue.

48.     On June 28, 2010, The Court's assigned judge preceding Judge Hilder, on an oral motion of Wolf Mountain, ordered: "I'm not going to direct the parties to enter into any stipulation but what I can do is issue the order that I just did that under Rule 15D, supplemental pleadings will be allowed and will be tried in the trial in this case based upon everything that I've seen, that it would be the intent to permit each of the parties to have their full rights to reasonable discovery and motion practice with regard to any supplemental claims that may be raised.  So, that is the Order of the Court."

49.     Once the Court re-opened the previously closed pleadings, The Partnership felt obliged to, and did, in order to avoid any later contention of claim

preclusion, file a supplemental pleading in Osguthorpe 2, asserting that it had claims arising against The Canyons and Wolf Mountain arising from the Default Notice.  A genuine copy of that supplemental pleading, filed on July 19, 2010,  is attached hereto as Exhibit I.  The Partnership undertook no discovery or motion practice with respect to those claims asserted for the first time in Osguthorpe 2 under the SPA Agreement, but instead, on September 29, 2010, filed its "Motion to Compel Arbitration and to Stay All Claims in this Action Bearing on or Relating in Any Way to Any Alleged Default under the Spa Agreement."

50.     The day that the Order Denying Arbitration was entered, The Partnership, as was its right under Utah law, filed a Notice of Appeal of such interlocutory order to the Utah Supreme Court, as provided by UTAH CODE ANN. § 78B-11-129(1)(a), in a case styled *Osguthorpe v. ASC Utah, Inc.* Case No. 20100928.  That appeal remains pending and The Partnership has not yet been afforded any fair or adequate opportunity to be heard on the appeal.

51.     The Partnership then argued to Judge Hilder that the Court no longer had jurisdiction over any arbitrable issues because the filing of the Notice of Appeal divested the Court of jurisdiction under Utah law and transferred it to the Utah Supreme Court in Case No. 20100928.  *See Hi-Country Estates Homeowners Ass'n v. Foothills Water Co.,* 942 P.2d 305, 306-07 (Utah 1996) (holding that trial court has no jurisdiction to enter orders on any issues on appeal); *accord McCauley v. Halliburton Energy Services, Inc.,* 413 F.3d 1158, 1160-62 (10th Cir. 2005)("we are persuaded by the reasoning of the latter circuits that upon the filing of a non-frivolous [interlocutory appeal from an order denying a motion to compel arbitration], the district court is

divested of jurisdiction until the appeal is resolved on the merits.")

52.    Judge Hilder and the Court nevertheless continued forward and proceeded with respect to all issues which require arbitration under the Arbitration Agreement, to hear and decide motions and to set and re-set trial dates to determine all such issues which are arbitrable under the Arbitration Agreement.

53.    The Partnership therefore moved the Court for a stay of proceedings before Judge Hilder pending resolution of the appeal in Case No. 20100928.  Judge Hilder denied that motion.

54.    The Partnership therefore filed in Case No. 20100928 a petition for emergency relief and motion for stay in the Utah Supreme Court, seeking an immediate stay pending the resolution of the appeal, pursuant to UTAH R. APP. P. 8, 8(a).

55.    The Utah Supreme Court entered its order denying such petition and motion for stay without comment on January 20, 2011.  A genuine copy of such order is attached hereto as Exhibit J.

56.    Judge Hilder and the Court therefore continue to move forward to trial on all issues which are arbitrable under the Arbitration Agreement despite the pending appeal, in violation of The Partnership's procedural due process and substantive due process rights.

57.    The Partnership has sought and exhausted all procedural remedies in the state courts effective as of January 20, 2011, when the Utah Supreme Court did not exercise its discretion in favor of staying Judge Hilder and the Court from proceeding, that could preserve its right to a fair hearing before trial on its rights under the Arbitration Agreement.

58.     Judge Hilder and the Court are state actors and all of their actions as described herein are and have been undertaken under color of state law.

59.     The Canyons and Wolf Mountain have  acted in concert with Judge Hilder and the Court or have otherwise conspired with them or the actions of the Court and Judge Hilder have otherwise been essential to The Canyons and Wolf Mountain to move forward to litigate the issues which are subject to The Partnership's contractual right of arbitration under the Arbitration Agreement and they have acted and continue to act in concert with Judge Hilder and the Court in the violation of The Partnership's civil rights.  Without the assistance of Judge Hilder and the Court, The Canyons and Wolf Mountain would not be able to commit the civil rights violations they have committed and continue to commit.

60.     Judge Hilder has set the trial of all such arbitrable issues to commence in the Court on March 8, 2011, which means that The Partnership will not be heard on its appeal to the Utah Supreme Court and preclusive effect will be obtained before The Partnership has any fair hearing before the Utah Supreme Court on its right to have all such issues determined by an arbitrator.

61.     The Partnership's rights in and pursuant to the Arbitration Agreement are being and will be irreparably injured by the continuation of proceedings by Judge Hilder and the Court, inter alia, by the impairment of the arbitrator's ability to protect the efficacy of any award and to proceed in his or her duties pursuant to the terms of the Arbitration Agreement.

62.     The Partnership's rights in and pursuant to the Arbitration Agreement are being and will be irreparably injured by the continuation of proceedings by Judge Hilder

17

and the Court, *inter alia*, by the specter of preclusive effect over the arbitrator concerning all arbitrable issues decided in the state court proceedings and by the prospective entry the Court of a final judgment on such issues.

63.     The Partnership has the right under the Federal Arbitration Act, 9 U.S.C. § 3, to have a stay of all proceedings before Judge Hilder and in the Court concerning all issues which are arbitrable under the Arbitration Agreement pending final resolution of The Partnership's motion to compel arbitration and to stay proceedings which are now on appeal.

64.     By proceeding forward to determine and to try all issues for which arbitration is mandatory under the Arbitration Agreement and by proceeding based on the Utah Arbitration Act's public policy underpinnings which conflict with and are preempted by the Federal Arbitration Act, Judge Hilder and the Court, in concert and conspiracy with The Canyons and Wolf Mountain, have deprived and continue to deprive The Partnership of rights guaranteed to it under the Constitution and laws of the United States, in violation of 42 U.S.C. § 1983.

65.     By proceeding forward to determine and to try all issues for which arbitration is mandatory under the Arbitration Agreement, before final resolution of The Partnership's appeal, Judge Hilder and the Court, in concert and conspiracy with The Canyons and Wolf Mountain, have violated and continue to violate The Partnership's right to procedural due process, as guaranteed by the Fourteenth Amendment, in violation of 42 U.S.C. § 1983.  No post-deprivation remedy is adequate because even if The Partnership prevails on its appeal, the arbitrator's ability to carry out a full and fair arbitration will be destroyed, among other ways, by the existence of preclusive effect

from the trial, so defendants effectively deny The Partnership its right to be heard on its appeal in a fair and meaningful manner.

66.     By proceeding forward to determine and to try all issues for which arbitration is mandatory under the Arbitration Agreement while there is an active appeal of the denial of The Partnership's motion to compel arbitration and to stay proceedings pending arbitration, Judge Hilder and the Court, acting in concert or otherwise in conspiracy with The Canyons and Wolf Mountain, have violated and continue to violate The Partnership's right to due process, as guaranteed by the Fourteenth Amendment, in violation of 42 U.S.C. § 1983, by taking The Partnership's property interest under the Arbitration Agreement without due process of law, in that The Partnership has not received the full and fair hearing on appeal to which Utah law provides it is entitled.

67.     The Canyons has refused to arbitrate any of the arbitrable issues under the SPA Agreement's arbitration agreement and has instead insisted on proceeding forward to litigate the issues in concert with the state courts.

68.     Wolf Mountain has refused to arbitrate certain of the arbitrable issues under the SPA Agreement's arbitration agreement and has instead insisted on proceeding forward to litigate those issues in concert with The Canyons and the state courts.

69.     The SPA Agreement has afforded The Partnership rights under Utah State law and in particular the contractual right to mandatory arbitration of all issues arbitrable under the SPA Agreement's arbitration agreement, which rights are enforceable property rights.  Those property rights are protected by the Fourteenth Amendment.  By proceeding forward to determine and to try all issues which are

arbitrable under the SPA Agreement's mandatory arbitration agreement without awaiting the disposition of the pending appeal, Judge Hilder and the Court, in concert and conspiracy with The Canyons and Wolf Mountain, are depriving The Partnership of its property rights in the SPA Agreement without the due process of law the Fourteenth Amendment guarantees to The Partnership, in violation of 42 U.S.C. § 1983.

70.     The Partnership has the right to receive relief from this court, under the Federal Arbitration Act, in the way of staying all actions by Judge Hilder and proceedings in the Court and all state courts concerning all of the arbitrable issues which underlie The Partnership's claims until such time as arbitration is concluded.

71.     The Partnership has the right to receive from this Court injunctions against all defendants, preventing the state court proceedings from moving forward in deprivation of The Partnership's rights secured by the Constitution and laws of the United States and in violation of the Fourteenth Amendment, which deprivations and violations will continue to cause irreparable injury to The Partnership, unless enjoined, until a final arbitration award is entered on all arbitrable issues.

**WHEREFORE**, The Partnership requests the following relief:

A.     For a declaratory judgment under 28 U.S.C. §§ 2201-02, declaring the right of The Partnership to have its right to mandatory and binding arbitration determined in accordance with the Federal Arbitration Act and declaring that the Federal Arbitration Act preempts so much of the Utah Arbitration Act and Utah law that, based on the Utah public policy upon which the Utah Act was adopted, such public policy being that in cases where compelling arbitration would be inefficient or would result in some waste of Utah's judicial resources, prohibits enforcement by the Utah

courts of the mandatory Arbitration Agreement;

      B.     For an order under the Federal Arbitration Act, 9 U.S.C. § 3, ordering an immediate stay of all state court proceedings concerning issues for which arbitration is mandatory under the Arbitration Agreement;

      C.     For an order under the Federal Arbitration Act, 9 U.S.C. § 4 compelling all issues for which arbitration is mandatory under the Arbitration Agreement to be arbitrated between the parties to the SPA Agreement, including such all issues of dispute between The Canyons and Wolf Mountain;

      D.     For a declaratory judgment declaring that Judge Hilder and the Court, under color of state law, have deprived and continue to deprive The Partnership of rights guaranteed to it under the laws and Constitution of the United States, acting in concert, or otherwise in conspiracy with or in essential support of, The Canyons and Wolf Mountain, by depriving The Partnership of its rights under federal law, namely the Federal Arbitration Act, to a stay of proceedings;

      E.     For a declaratory judgment that Judge Hilder and the Court, under color of state law, have violated and continue to violate The Partnership's rights to procedural due process under the Fourteenth Amendment, acting in concert or otherwise in conspiracy with, or in essential support of, The Canyons and Wolf Mountain, in circumstances where proceeding forward through trial prior to a full and meaningful hearing by the Utah Supreme Court on The Partnership's appeal of the denial of the motion to compel arbitration and for a stay would effectively negate the benefit of the Arbitration Agreement and even if the Utah Supreme Court were to rule in The Partnership's favor, it would not constitute an effective post-deprivation remedy

and/or as to such other and further procedural due process deprivations as the proof may show at trial;

F.      For a declaratory judgment that Judge Hilder and the Court, under color of state law, have violated and threaten to continue to violate The Partnership's due process rights in its constitutionally protected property interest in the SPA Agreement, by arbitrarily refusing to stay proceedings and await the outcome of appeal and by arbitrarily concluding that The Partnership has no right to arbitration under an ostensible precept of Utah public policy, rather than the plain language of the Utah Arbitration Act, thereby taking away The Partnership's property interest in having all arbitrable issues decided by an arbitrator, and not any court or jury, without affording The Partnership the due process to which it is entitled, in concert with, or otherwise in conspiracy with or in essential support of, The Canyons and Wolf Mountain and/or as to such other and further due process deprivations as the proof may show at trial;

G.      For an immediate injunction against all further deprivations, violations and takings as 42 U.S.C. § 1983 may allow, and specifically but without limitation for an injunction against The Canyons and Wolf Mountain, the Court and Judge Hilder preventing each one and all of them from proceeding further with any proceedings in the consolidated state court case pending the issuance of a final arbitration award;

H.      For any and all of The Partnership's attorneys' fees, costs and expenses as may be allowed at law, in equity, by contract, case, statute, rule, inherent power of the court or otherwise;

I.      For all such other and further relief, whether legal, equitable or otherwise, to which The Partnership would be entitled based solely on the proof presented at trial, and not related to any specific legal or equitable theory presented in any pleading or

22

paper in any form or which was omitted from being presented in any pleading or paper in any form;

J.     For all such other and further relief as the Court deems just, equitable and proper in the premises or to which The Partnership is entitled, as FED. R. CIV. P. 54(c) allows, without regard to whether such relief or request for relief was pleaded or unpleaded.

DATED this 7th day of February, 2011.

PETERS | SCOFIELD
*A Professional Corporation*

/s/ David W. Scofield_____
DAVID W. SCOFIELD
Attorneys for Plaintiff D.A. Osguthorpe
        Family Partnership