DAVID W. SCOFIELD - 4140
**PETERS | SCOFIELD**
*A Professional Corporation*
Suite 115 Parleys Corporate Center
2455 East Parleys Way
Salt Lake City, Utah  84109
Telephone:   (801) 322-2002
Facsimile:   (801) 322-2003
E-Mail:      dws@psplawyers.com

Attorneys for Plaintiff

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

---

| | |
|---|---|
| **D. A. OSGUTHORPE FAMILY PARTNERSHIP**, a Utah limited partnership,<br><br>Plaintiff,<br><br>-vs-<br><br>**ASC UTAH, INC.**, a Maine corporation; **WOLF MOUNTAIN RESORTS, L.C.**, a Utah limited liability company; the **THIRD JUDICIAL DISTRICT COURT**, an agency of the Judicial Branch of government of the State of Utah; and **THE HONORABLE ROBERT K. HILDER**, in his capacity as a Judge of the Third Judicial District Court in and for the State of Utah,<br><br>Defendants**.** | **MEMORANDUM IN SUPPORT OF MOTION FOR ORDER COMPELLING ARBITRATION AND TO STAY, FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND FOR EXPEDITED RESOLUTION**<br><br><br><br>Case No. 2:11-cv-00147-DN<br><br>Honorable David O. Nuffer<br>United States Chief Magistrate Judge |

Plaintiff D. A. Osguthorpe Family Partnership ("The Partnership"), by and through

its undersigned counsel, and pursuant to DUCivR 7-1(b)(1), respectfully submits the

following memorandum in support of its Motion for Order Compelling Arbitration and to Stay, for a Temporary Restraining Order and Preliminary Injunction and For Expedited Resolution:

### PRELIMINARY STATEMENT REGARDING FACTS AND ISSUES

The Partnership, together with defendants ASC Utah, Inc. ("The Canyons") and Wolf Mountain Resorts, L.C. ("Wolf Mountain"), and others, are parties to an agreement that requires all disputes and differences relating to the agreement to be resolved by mandatory and binding arbitration. The agreement in question, known as the "SPA Agreement, involves expansion of The Canyons resort and development of a golf course in Summit County in furtherance thereof. The Canyons and Wolf Mountain chose to commence litigation in state court against each other rather than to arbitrate claims of breach of that agreement by each other.

The Partnership, in relation to agreements completely unrelated to the SPA Agreement, but instead relating to existing use of portions of The Partnership's real property, filed suit in state court against Wolf Mountain in 2006 and The Canyons in 2007. At the urging of The Canyons, but opposed by The Partnership, the state court issued a rule 42 consolidation order entered in 2007, consolidating proceedings on The Partnership's claims on unrelated agreements into the case number of the first action filed between The Canyons and Wolf Mountain, neither of which involved The Partnership. After several years of litigating those claims, Wolf Mountain asked the state court to compel arbitration. The state court found that Wolf Mountain had waived its right to arbitration by litigating its claims and defenses under the agreement for years. Wolf Mountain appealed to the Utah Supreme Court.

In 2009, Summit County, as another party to the SPA Agreement, purported to

declare a default under that agreement by The Partnership.  If a default existed by The Partnership as alleged by Summit County, such default was caused by breaches of the SPA Agreement which had been the subject of years of litigation between The Canyons and Wolf Mountain.  On September 29, 2010, The Partnership asked the state court to compel arbitration of all arbitrable issues.  The resolution of arbitrable issues by the state court would be prejudicial to The Partnership's right to arbitration of those issues as part of its claims arising by virtue of Summit County's 2009 declaration of default.

Just prior to the scheduled November 24 hearing on the motion, the Utah Supreme Court issued on November 19, 2010, its decision on Wolf Mountain's interlocutory appeal holding that Wolf Mountain had waived its right to arbitration. Judge Hilder ruled on the motion the next day, without hearing, that the Utah Supreme Court's decision also required a denial of The Partnership's motion without a finding of waiver by The Partnership.  The Partnership appealed and sought stays pending appeal from Judge Hilder and the Utah Supreme Court, which were denied.  Judge Hilder, the Third District Court, The Canyons and Wolf Mountain therefore are proceeding to try all arbitrable issues while The Partnership's appeal remains pending.

By proceeding, Judge Hilder, the Third District Court, The Canyons and Wolf Mountain are depriving The Partnership of the benefits of the mandatory arbitration agreement signed by it, The Canyons and Wolf Mountain, in violation of the Federal Arbitration Act and without due process of law.  Mindful of issues of comity, but supported by the overriding federal public policy enacted by Congress in the form of The Federal Arbitration Act and The Partnership's rights thereunder, The Partnership respectfully asks this court to stay all proceedings in the Third District Court, by Judge Hilder, involving arbitrable issues, to compel the same issues to arbitration and to enjoin

3

the defendants from proceeding with the state court action pending the completion of arbitration.

## FACTS[1]

1.      In or about November 1999, The Partnership entered into an agreement entitled "Amended and Restated Development Agreement For the Canyons Specially Planned Area– Snyderville Basin, Summit County, Utah," a genuine copy of which is attached hereto as Exhibit A [hereinafter the "SPA Agreement"].

2.      The SPA Agreement contains a mandatory binding arbitration clause which states broadly, in pertinent part:

> Binding Arbitration. In the event that the default mechanism contained herein shall not sufficiently resolve a dispute under this Amended Agreement, then ***every such continuing dispute, difference, and disagreement shall be referred to a single arbitrator*** agreed upon by the parties, or if no single arbitrator can be agreed up on, an arbitrator or arbitrators shall be selected in accordance with the rules of the American Arbitration Association and such dispute, difference, or disagreement shall be resolved by the binding decision of the arbitrator. ...

SPA Agreement, at 60, ¶ 5.8.1 (emphasis added) [hereinafter "Arbitration Agreement"].

3.      Based on the Arbitration Agreement The Partnership filed a motion to compel arbitration in The Court on ***September 29, 2010, over four months ago***.  A more detailed procedural history of proceedings in the Court is set forth below. Although that motion has not been finally resolved, The Canyons, Wolf Mountain, The Court and Judge Hilder are preparing to proceed to trial on all issues as to which arbitration is required, on March 8, 2011.

4.      Judge Hilder issued a Ruling and Order (re Arbitration Issues) on

---

[1]All of the facts set forth in this memorandum are recited from the Complaint except for those which contain citations to the Declaration of Stephan A. Osguthorpe ("Osguthorpe Dec."), which declaration also verifies the allegations of the Complaint and authenticates the documents attached hereto, which are also attached to the Complaint and supplies some .

4

November 20, 2010, which was filed on November 22, 2010, [hereinafter "Order Denying Arbitration"], a genuine copy of which is attached hereto as Exhibit B.

5.      In the Order Denying Arbitration, Judge Hilder did not find that the Arbitration Agreement was not valid or was not binding on The Partnership, The Canyons, Wolf Mountain or any other party thereto.  *See* Order Denying Arbitration, *passim*.  Judge Hilder did not find that the SPA Agreement disputes were not arbitrable issues that were the subject of the Arbitration Agreement.  *See* Order Denying Arbitration, *passim*.  Judge Hilder further did not find any waiver by The Partnership of its contractual right under the Arbitration Agreement to have all arbitrable issues decided by way of arbitration.  *See* Order Denying Arbitration, *passim*.  Instead, Judge Hilder held that a decision of the Utah Supreme Court entered the day prior to the Order Denying Arbitration, styled *ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.,* 2010 UT 65, No. 20090059, ___ P.3d ___ (November 19, 2010) [hereinafter "*ASC Utah, Inc.*"], a genuine copy of which is attached hereto as Exhibit C, stood for the proposition that the Utah courts would not enforce the Arbitration Agreement or The Partnership's contractual rights under the Arbitration Agreement because two other parties (out of many) to the Arbitration Agreement, namely The Canyons and Wolf Mountain, had waived their arbitration rights and litigated with The Court's assistance and resources, for years, issues that were arbitrable under the Arbitration Agreement.

6.      Judge Hilder and The Court refused and continue to refuse to enforce any other party to the Arbitration Agreement's contractual right to mandatory arbitration of any arbitrable issues on which The Court (and those two out of many SPA Agreement parties) has spent time and resources.

7.      Judge Hilder held that Utah public policy prevents The Partnership from

enforcing the Arbitration Agreement in light of the years of litigation between The

Canyons and Wolf Mountain concerning issues required to be arbitrated, because "the

[Utah state law public] policies underlying arbitration have been so violated in this case

that arbitration is not an option open to **any** party." Order Denying Arbitration, at 7

(emphasis added).

8.     The Utah public policy to which Judge Hilder referred was set forth in *ASC*

*Utah, Inc.*:

> [Utah's] legislature enacted the [Utah Arbitration] Act **in accordance with**
> **a public policy that favors arbitration agreements** as contractual
> agreements between parties not to litigate, *Cent. Fla. Invs., Inc. v.*
> *Parkwest Assocs.,* 2002 UT 3, ¶ 16, 40 P.3d 599, **only insofar as they**
> **serve as "speedy and inexpensive methods of adjudicating**
> **disputes,"** *Allred v. Educators Mut. Ins. Ass'n of Utah,* 909 P.2d 1263,
> 1265 (Utah 1996), **and help reduce strain on judicial resources,** *See*
> *Chandler,* 833 P.2d at 358. There is no public policy supporting arbitration
> when it would undermine these goals. "The policies favoring arbitration
> are largely defeated when the right of arbitration is not raised until an
> opposing party has undertaken much of the expense necessary to
> prepare a case for trial." *Id.* at 361.

ASC Utah, Inc., at 7, ¶ 18 (emphasis added).

9.     Judge Hilder therefore deprived The Partnership of its contractual right to

have such arbitrable issues determined in arbitration for the reason that The Canyons

and Wolf Mountain, two other parties to the Arbitration Agreement, have extensively

litigated issues in The Court which are subject of the mandatory arbitration requirement.

That Utah public policy of rejecting the enforcement of arbitration agreements unless

arbitration serves as a "speedy and inexpensive method[ ] of adjudicating disputes,"

and "reduce[s] strain on judicial resources" is in direct conflict with the Federal

Arbitration Act and Congress' intent in enacting it so has previously been expressly

rejected as grounds not to enforce mandatory arbitration agreements by the United

States Supreme Court:

We conclude, however, on consideration of Congress' intent in passing the statute, that a court must compel arbitration of otherwise arbitrable claims, when a motion to compel arbitration is made. *The legislative history of the Act establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate. We therefore reject the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims.* . . . This is not to say that Congress was blind to the potential benefit of the legislation for expedited resolution of disputes. Far from it, the House Report expressly observed:

> "It is practically appropriate that the action should be taken at this time when there is so much agitation against the costliness and delays of litigation. These matters can be largely eliminated by agreements for arbitration, if arbitration agreements are made valid and enforceable." *Id.,* at 2.

Nonetheless, *passage of the Act was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered, and we must not overlook this principal objective when construing the statute, or allow the fortuitous impact of the Act on efficient dispute resolution to overshadow the underlying motivation.* Indeed, this conclusion is compelled by the Court's recent holding in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1 (1983), in which we affirmed an order requiring enforcement of an arbitration agreement, even though the arbitration would result in bifurcated proceedings. That misfortune, we noted, "occurs because the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement," *id.,* at 20. *See also id.,* at 24-25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

We therefore are not persuaded by the argument that the conflict between two goals of the Arbitration Act -- enforcement of private agreements and encouragement of efficient and speedy dispute resolution -- must be resolved in favor of the latter in order to realize the intent of the drafters. *The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is "piecemeal" litigation,* at least absent a countervailing policy manifested in another federal statute. [Citation omitted.] *By compelling arbitration of state-law claims, a district court successfully protects the contractual rights of the parties and their rights under the Arbitration Act.*

*Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 219-21, 105 S. Ct. 1238, 1242-43, 84 L. Ed. 2d 158, 164-65 (1985) (emphasis added).

10.     The ostensible precept of Utah public policy on which Judge Hilder based the deprivation of The Partnership's right to arbitration is not found within the plain language of the Utah Arbitration Act, which itself makes arbitration mandatory unless there is ***no enforceable agreement*** to arbitrate and so is arbitrary.  *See* UTAH CODE ANN. § 78B-11-108.  The same is true of the predecessor to the current Act.  *See* UTAH CODE ANN. § 78-31a-3 to -4 (1999)(mandating arbitration unless the agreement is not valid or enforceable due to "grounds existing at law or equity to set aside the agreement, or when fraud is alleged . . .."  *Id.,* section 3).

11.     Not only The Partnership, Wolf Mountain and The Canyons (a Maine corporation and Master Developer under the SPA Agreement), are parties to the SPA Agreement, but also, without limitation, individuals, Nevada resident Gregory A. Dean, Virginia resident Dr. Joseph L. Krofcheck, California resident Gerald M. Friedman, and limited liability companies DRM Investment Company, L.C. and Florida resident Parkway Land Development, L.C., each of which signed the SPA Agreement through their then-New York resident managing member, Max Schlopy.  *See* SPA Agreement signatures.

12.     The SPA Agreement governs the development of hundreds of acres in Summit County, Utah, some of which is owned by the out-of-state parties listed above, and includes the development of golf courses, hotels, condominiums and other "destination accommodations" and "resort support housing," commercial uses,  and other facilities, amenities and programs.  SPA Agreement, at 4-5.

13.     The SPA Agreement requires implementation of a transportation plan

which includes "linkages to the Salt Lake City area, including the airport, via various forms of transit for employees and guests." SPA Agreement, at 4-5.

14.     The SPA Agreement requires that "[i]n addition to providing housing opportunities **for seasonal residents and guests**, the RVMA [another party to the SPA Agreement] will construct rental housing and provide financial subsidies that will produce housing units for employees of The Resort and a portion of The Resort Community, as set forth elsewhere in this Amended Agreement." SPA Agreement, at 6 (emphasis added).

15.     The SPA Agreement includes within its scope "Timeshare Estate or Fractional Ownership Interest" residences as to which "[d]uring their interval use, owners may, as prescribed in applicable Condominium Declarations, either occupy the unit, trade the use period for use in an exchange program, or rent the unit to the general public through the rental program operated by the rental manager used by the owners' association." SPA Agreement, at 13.

16.     The required construction of the golf course must be undertaken, according to the SPA Agreement, "to satisfy the County's [i.e., Summit County, another party to the SPA Agreement] requirement that The Canyons be a **world class, all season resort**." SPA Agreement, at 29, ¶ 3.2.6 (emphasis added).

17.     The RVMA, another party to the SPA Agreement, is required to

prepare a Resort Competitiveness Analysis at least every five years **to assess the position of The Resort and Resort Community versus other global businesses viewed as competitors**. Such analysis will be undertaken with two markets in mind– short-term visitors to The Resort and resort property purchasers. The purpose of the analysis is to **identify trends in the industry and anticipate and implement, when appropriate, programs, amenities and facilities, marketing strategies, real estate offerings, and, other measures to capitalize on such trends and attract and retain customers.** The RVMA will include the

analysis in the Annual Review in these years that the analysis is undertaken.

SPA Agreement, at 38, ¶ 3.3.4(a)(3) (emphasis added).

18.     The SPA Agreement requires that all notices thereunder be sent through the United States mails, by certified mail, including to addresses in Maine and Texas. SPA Agreement, at 65-66, ¶ 6.4.

19.     The SPA Agreement expressly provides "that the obligations imposed by this Amended Agreement are only such as are consistent with state **and federal law**." SPA Agreement, at 69, ¶ 6.19.  The SPA Agreement expressly recognizes that some of its provisions may be subject to invalidation if federal law is inconsistent with the requirements of the SPA Agreement and states that, in those circumstances, the SPA Agreement "shall be deemed amended to the extent necessary to make it consistent with . . . federal law."  SPA Agreement, at 69, ¶ 6.19.

20.     On June 14, 2006, The Canyons filed an action against Wolf Mountain in the Third District Court, Summit County, State of Utah, styled *ASC Utah, Inc. v. Wolf Mountain Resorts,* Case No. 060500297 (the "297 Case")– a copy of the operative First Amended Complaint in that action ("ASC FAC") is attached hereto as Exhibit D.

21.     In the 297 Case, The Canyons asserts claims against Wolf Mountain based on Wolf Mountain's alleged failures to perform under the SPA Agreement.  *See* The ASC FAC, *passim* (for one example: "Because of Wolf's refusal to convey the golf course land and to execute the other documents necessary for the golf course development, on May 3,2006, [Summit County] issued Wolf a notice of default of its obligations under the SPA Agreement including Section 3.2.6 referenced above. This notice provided Wolf sixty days (i.e. until July 5, 2006) to cure this default."  ASC FAC, ¶

42.

22.     On August 8, 2006, Wolf Mountain filed an action against The Canyons, in the Third District Court, Summit County, State of Utah, styled *Wolf Mountain Resorts, L.C. v. ASC Utah, Inc.,* Case No. 060500404 (the "404 Case")– a copy of the operative First Amended Complaint in that action ("WM FAC"), filed after consolidation under the consolidated 297 number,  is attached hereto as Exhibit E.

23.     In the 404 Case, Wolf Mountain asserts claims against The Canyons based on The Canyons' alleged failures to perform under the SPA Agreement.  *See* the WM FAC, *passim* (for one example: "The November 1999 SPA Agreement required that the construction of the golf course be commenced almost immediately and completed by November 2001. The ASC Defendants did not even commence construction by November 2001 much less complete it, thereby adversely affecting the salability of residential properties in the resort area."  WM FAC, ¶ 53.)

24.     The Partnership has never been joined as a party to either the 297 Case or the 404 Case and thus no claims have ever been asserted by it or against it in either of those cases.

25.     On August 11, 2006, The Partnership and others filed an action against Wolf Mountain, in the Third District Court, Salt Lake County, State of Utah, styled *Osguthorpe v. Wolf Mountain Resorts, L.C.,* Case No. 060913348, which was *sua sponte* transferred to Summit County, where it was assigned Case No. 070500018 ("Osguthorpe 1")– a copy of the operative Complaint in that action ("OSG1 Comp.") is attached hereto as Exhibit F.

26.     In the Osguthorpe 1 action, The Partnership asserted claims against Wolf Mountain for breaches of an agreement between those parties and for rescission

thereof.  *See* OSG1 Comp., *passim*.  No claims or allegations in the Osguthorpe 1 action related to the SPA Agreement.  *See* OSG1 Comp., *passim*.

27.     In the Osguthorpe 1 action, The Partnership asserted claims against Wolf Mountain for breaches of an agreement between those parties, unrelated to the SPA Agreement, for the use of certain of The Partnership's real property, and for rescission of that agreement.  *See* OSG1 Comp., *passim*.  No claims or allegations in the Osguthorpe 1 action relate to the SPA Agreement.  *See* OSG1 Comp., *passim*.

28.     On September 21, 2007, The Partnership and others filed an action against The Canyons in the Third District Court, Summit County, State of Utah, styled *Osguthorpe v. ASC Utah, Inc.,* Case No. 070500520 ("Osguthorpe 2").

29.     The Canyons sought and received on November 9, 2006, consolidation under UTAH R. CIV. P. 42 of the 404 Case into the 297 Case.  Thereafter, The Canyons sought and received on January 18, 2008, over vigorous objection by The Partnership, consolidation under UTAH R. CIV. P. 42 of Osguthorpe 1 and Osguthorpe 2 into the 297 Case.   *See* OSG2 Comp., *passim*.

30.     Following such consolidation, on August 25, 2008, The Partnership filed under the consolidated case 297 number its First Amended Complaint, which is the operative complaint in Osguthorpe 2 ("OSG2 Comp."), a genuine copy of which is attached hereto as Exhibit G.  No claims or allegations in the Osguthorpe 2 action relate to the SPA Agreement.  *See* OSG2 Comp., *passim*.

31.     Under Utah law, the consolidation of cases under UTAH R. CIV. P. 42 does not cause any of the consolidated cases to lose "their separate identity in so far as the parties, issues, and proof are concerned."  *T.M. v. B.B. ( In re T.B.),* 2010 UT 42, ¶ 22 & n.8, 232 P.3d 1026, 1030 & n.8 (quoting 1A C.J.S. *Actions* § 217, 690 (1985)).

32.     In the OSG2 FAC, The Partnership asserted claims against The Canyons and Wolf Mountain for breaches of the agreements between it and each of The Canyons and Wolf Mountain, unrelated to the SPA Agreement, for the use of certain of The Partnership's real property, and for rescission of those agreements.  *See* OSG2 FAC, *passim*.  Still, no claims or allegations in the Osguthorpe 2 action related to the SPA Agreement.  *See* OSG2 FAC, *passim*.

33.     The court-ordered cutoff for any further amendment to the pleadings had been set to occur, and later expired, on March 16, 2009.

34.     Following the court-ordered cut-off to amend pleadings, Summit County, on July 29, 2009, purporting to act under the SPA Agreement, issued its ostensible Findings of Fact and Conclusions of Law [hereinafter "Default Notice], declaring, *inter alia*, The Partnership, The Canyons, Wolf Mountain and others to have defaulted under the SPA Agreement.  A genuine copy of Summit County's "Findings of Fact and Conclusions of Law Regarding the Enforcement and Status of the [SPA Agreement]" is attached hereto as Exhibit H.

35.     The Default Notice purports to declare The Partnership in default of the SPA Agreement for failing to enter into an agreement with other parties to the SPA Agreement.  Under the SPA Agreement, the parties were obligated to enter into an agreement on or before February, 2000 regarding the setting aside of land for the golf course, for materially interfering with the golf course development and for failing to provide deeds for land needed to develop the golf course.  *See* Default Notice, at 45-46.

36.     The Default Notice purported to rescind all of The Partnership's entitlements provided under the SPA Agreement if the default were not cured by

October 15, 2009.

37.     All of the alleged defaults against The Partnership were predicated upon and curable only if The Canyons and Wolf Mountain first performed under the SPA Agreement the very issues which had been litigated between them in the 297 Case and the 404 Case for the preceding three years among other defaults of The Canyons and Wolf Mountain.

38.     On June 28, 2010, The Court's assigned judge preceding Judge Hilder, on an oral motion of Wolf Mountain, ordered: "I'm not going to direct the parties to enter into any stipulation but what I can do is issue the order that I just did that under Rule 15D, supplemental pleadings will be allowed and will be tried in the trial in this case based upon everything that I've seen, that it would be the intent to permit each of the parties to have their full rights to reasonable discovery and motion practice with regard to any supplemental claims that may be raised.  So, that is the Order of the Court."

39.     Once the Court re-opened the previously closed pleadings, The Partnership felt obliged to, and did, in order to avoid any later contention of claim preclusion, file a supplemental pleading in Osguthorpe 2, asserting that it had claims arising against The Canyons and Wolf Mountain arising from the Default Notice.  A genuine copy of that supplemental pleading, filed on July 19, 2010,  is attached hereto as Exhibit I.  The Partnership undertook no discovery or motion practice with respect to those claims asserted for the first time in Osguthorpe 2 under the SPA Agreement, but instead, on September 29, 2010, filed its "Motion to Compel Arbitration and to Stay All Claims in this Action Bearing on or Relating in Any Way to Any Alleged Default under the Spa Agreement."

40.     The day that the Order Denying Arbitration was entered, The Partnership,

as was its right under Utah law, filed a Notice of Appeal of such interlocutory order to the Utah Supreme Court, as provided by UTAH CODE ANN. § 78B-11-129(1)(a), in a case styled *Osguthorpe v. ASC Utah, Inc.* Case No. 20100928.  That appeal remains pending and The Partnership has not yet been afforded any fair or adequate opportunity to be heard on the appeal.

41.     The Partnership then argued to Judge Hilder that the Court no longer had jurisdiction over any arbitrable issues because the filing of the Notice of Appeal divested the Court of jurisdiction under Utah law and transferred it to the Utah Supreme Court in Case No. 20100928.  *See Hi-Country Estates Homeowners Ass'n v. Foothills Water Co.,* 942 P.2d 305, 306-07 (Utah 1996) (holding that trial court has no jurisdiction to enter orders on any issues on appeal); *accord McCauley v. Halliburton Energy Services, Inc.,* 413 F.3d 1158, 1160-62 (10th Cir. 2005)("we are persuaded by the reasoning of the latter circuits that upon the filing of a non-frivolous [interlocutory appeal from an order denying a motion to compel arbitration], the district court is divested of jurisdiction until the appeal is resolved on the merits.")

42.     Judge Hilder and the Court nevertheless continued forward and proceeded with respect to all issues which require arbitration under the Arbitration Agreement, to hear and decide motions and to set and re-set trial dates to determine all such issues which are arbitrable under the Arbitration Agreement.

43.     The Partnership therefore moved the Court for a stay of proceedings before Judge Hilder pending resolution of the appeal in Case No. 20100928.  Judge Hilder denied that motion.

44.     The Partnership therefore filed in Case No. 20100928 a petition for emergency relief and motion for stay in the Utah Supreme Court, seeking an immediate

stay pending the resolution of the appeal, pursuant to UTAH R. APP. P. 8, 8(a).

45.     The Utah Supreme Court entered its order denying such petition and motion for stay without comment on January 20, 2011.  A genuine copy of such order is attached hereto as Exhibit J.

46.     Judge Hilder and the Court therefore continue to move forward to trial on all issues which are arbitrable under the Arbitration Agreement despite the pending appeal, in violation of The Partnership's procedural due process and substantive due process rights.

47.     The Partnership has sought and exhausted all procedural remedies in the state courts effective as of January 20, 2011, when the Utah Supreme Court did not exercise its discretion in favor of staying Judge Hilder and the Court from proceeding, that could preserve its right to a fair hearing before trial on its rights under the Arbitration Agreement.

48.     Judge Hilder has set the trial of all such arbitrable issues to commence in the Court on March 8, 2011, which means that The Partnership will not be heard on its appeal to the Utah Supreme Court and preclusive effect will be obtained before The Partnership has any fair hearing before the Utah Supreme Court on its right to have all such issues determined by an arbitrator.

49.     The Partnership's rights in and pursuant to the Arbitration Agreement are being and will be irreparably injured by the continuation of proceedings by Judge Hilder and the Court, which will impair the arbitrator's ability to protect the efficacy of any award and to proceed in his or her duties pursuant to the terms of the Arbitration Agreement.

50.     The Partnership is being and will continue to be irreparably injured by the

16

continuation of proceedings by Judge Hilder and the Court, by the specter of preclusive effect over the arbitrator concerning all arbitrable issues decided in the state court proceedings and by the prospective entry the Court of a final judgment on such issues.

51.     The Canyons has refused to arbitrate any of the arbitrable issues under the SPA Agreement's arbitration agreement and has instead insisted on proceeding forward to litigate the issues in concert with the state courts.

52.     Wolf Mountain has refused to arbitrate certain of the arbitrable issues under the SPA Agreement's arbitration agreement and has instead insisted on proceeding forward to litigate those issues in concert with The Canyons and the state courts.

53.     None of the differences or disputes under the SPA Agreement which involve the purported default of The Partnership, Wolf Mountain or The Canyons has been satisfactorily resolved, and The Partnership intends to assert its rights in arbitration against both The Canyons and Wolf Mountain.  The SPA Agreement issues litigated between The Canyons and Wolf Mountain in the actions they filed against each other form the predicate, in part, for Summit County's purported declaration of default against The Partnership. Osguthorpe Dec. ¶ 7.

54.     The Partnership has never served discovery concerning or engaged in any motion practice concerning any issues arbitrable under the SPA Agreement.  Until the pleadings were re-opened in state court, The Partnership never mentioned any of its claims under the SPA Agreement in its lawsuits and The Partnership decided to file its claims to avoid any issue of claim preclusion but then to move to compel arbitartion so that it would not be required to litigate any such issues and also to prevent further litigation between The Canyons and Wolf Mountain concerning any such issues.

17

Osguthorpe Dec. ¶ 8.

55.    The Partnership contracted with The Canyons and Wolf Mountain to have disputes under the SPA Agreement sent to arbitration.  If decisions are made in the state courts concerning those issues, the arbitrators may feel bound by such decisions or may in fact be precluded by considerations of res judicata or issue preclusion from making different finding in arbitration than were made in litigation.  Osguthorpe Dec. ¶ 9.

56.    Such a situation would be prejudicial to The Partnership's arbitration rights.  As one example, if The Canyons is successful in defending against Wolf Mountain's allegations of default or Wolf Mountain is successful in defending against The Canyons allegations of default, then The Partnership will be faced with the prospect that it will have fewer allegations of default available against either or both of The Canyons and Wolf Mountain because those allegations were resolved in the lawsuit between The Canyons and Wolf Mountain.  The Partnership then would be left with fewer grounds to assert default against either or both of The Canyons and Wolf Mountain and its prospects of success would be reduced accordingly, all because decisions had already been made in the state court, instead of in the arbitration. Osguthorpe Dec. ¶ 10.

57.    That damage could never be undone and would irreparably impair The Partnership's ability to fully and fairly arbitrate as the contact requires The Canyons and Wolf Mountain to do.  Osguthorpe Dec. ¶ 11.

## ARGUMENT

## I.    THIS COURT HAS JURISDICTION TO PROVIDE THE REQUESTED RELIEF.

This court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331

and 1343 in that the 42 U.S.C. § 1983 claim arises under federal law, including the

Fourteenth Amendment.  This court also has supplemental jurisdiction over the petition

to compel arbitration and to stay proceedings pursuant to 28 U.S.C. § 1367.

The Rooker-Feldman doctrine is applicable to deprive this court of jurisdiction.

The United States Supreme Court explained that the Rooker-Feldman doctrine applies

only in the narrow circumstances that existed in the cases which gave rise to the

doctrine, those required circumstances being that the plaintiff "filed suit in federal court

after the state proceedings ***ended***, complaining of an injury caused by the state-court

judgment and seeking ***review and rejection of that judgment***."  *Exxon Mobil Corp. v.*

*Saudi Basic Industries Corp.,* 544 U.S. 280, 291, 125 S. Ct. 1517, 1526, 161 L. Ed. 2d

454, 466 (2005) (emphasis added).  Here, the state court proceedings have not ended.

The order denying the motion to compel arbitration and to stay was interlocutory.

It could have awaited appeal until the lawsuit ended.  The Partnership took an appeal

from the interlocutory order as allowed by the Utah Arbitration Act and that appeal has

not ended.  There is, therefore, no existing judgement to review and reject:

> *Exxon Mobil* tells us when a state court judgment is sufficiently final for
> operation of the Rooker-Feldman doctrine: when "the state proceedings
> [have] ended." 125 S. Ct. at 1526***. If federal litigation is initiated before***
> ***state proceedings have ended***, then– even if the federal plaintiff expects
> to lose in state court and hopes to win in federal court– the litigation is
> parallel, and ***the Rooker-Feldman doctrine does not deprive the court***
> ***of jurisdiction***. *See id.* at 1526-28.

*Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto*

*Rico,* 410 F.3d 17, 17-18 (1st Cir. 2005) (emphasis added) (quoting & citing *Exxon*

*Mobile*).

Moreover, the order denying arbitration was premised exclusively on Utah public

policy as had been stated the day before the ruling.  This action seeks a declaration

that the policy of the Federal Arbitration Act pre-empts that Utah public policy, thereby

mandating arbitration now under the federal act.  Further, this action seeks to avoid

further constitutional deprivations occurring through the continuation of state

proceedings while the appeal to the Utah Supreme Court remains pending. In those

circumstances, the Court plainly stated:

> If a federal plaintiff "present[s] **some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party** . . ., **then there is jurisdiction** and state law determines whether the defendant prevails under principles of preclusion."

*Id.,* at 467.  That Judge Hilder made a decision under the public policy of the state of

Utah with respect to The Partnership's arbitration rights does not prevent The

Partnership from asking this court to make a decision under the federal policy of the

Federal Arbitration Act nor does it prevent The Partnership from claiming that the

continuing proceedings in the state court during the pendency of the appeal to the Utah

Supreme Court irreparably damage the very arbitration right that The Partnership is

asking the Utah Supreme Court to recognize:

> When there is parallel state and federal litigation, Rooker-Feldman is not triggered simply by the entry of judgment in state court.  This Court has repeatedly held that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."
>  . . .
> Nor does § 1257 stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court.

*Exxon Mobil Corp.,* at 292-93.  Here, there is not even a judgment in state court and the

order that was entered did not in any way address the Federal Arbitration Act or pre-

emption of Utah public policy.  So this court has proper, concurrent jurisdiction with the

state courts over the issue of compelling arbitration.

20

II.    **ABSTENTION IS INAPPROPRIATE DUE TO THE OVERRIDING FEDERAL POLICY OF ENFORCING ARBITRATION AGREEMENTS.**

The United States Supreme Court, in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983), provided the rule for balancing between consideration favoring abstention and opposing abstention where the Federal Arbitration Act is involved.  The Court reversed the district court's stay of the federal action out of deference to a parallel proceeding which had been filed in the state court, stating:

> This refusal to proceed was plainly erroneous in view of Congress' clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.  The Act provides two parallel devices for enforcing an arbitration agreement:  a stay of litigation in any case raising a dispute referable to arbitration, 9 U. S. C. § 3, and an affirmative order to engage in arbitration, § 4.  Both of these sections call for an expeditious and summary hearing, with only restricted inquiry into factual issues.  Assuming that the state court would have granted prompt relief to Mercury under the Act, there still would have been an inevitable delay as a result of the District Court's stay.  The stay thus frustrated the statutory policy of rapid and unobstructed enforcement of arbitration agreements.

*Id.* at 22-23.  The intent of Congress in passing the Federal Arbitration Act for the purposes described by the Court thus overrides any comity-based policies to the contrary.

III.    **THE FEDERAL ARBITRATION ACT REQUIRES AN ORDER COMPELLING ARBITRATION AND A STAY OF THE STATE COURT PROCEEDINGS.**

Section 3 of the Federal Arbitration Act requires that:

> "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, ***shall*** on application of one of the parties ***stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement***, providing the applicant for the stay is not in default in proceeding with such

arbitration.

9 U.S.C. § 3 (emphasis added).  Pursuant to the Anti-Injunction Act, 28 U.S.C. § 2283,

a court may not issue such a stay "except as expressly authorized by Act of Congress,

or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." A

stay, when issued subsequent to or in conjunction with an order compelling arbitration

concerning the same subject matter as the state court proceeding, falls within one or

both of the latter two exceptions.  *Nuclear Electric Insurance, Ltd. v. Central Power &*

*Light Co.,* 926 F. Supp. 428, 436 (S.D. N.Y. 1996) (citing *Standard Microsystems Corp.*

*v. Texas Instruments Inc.,* 916 F.2d 58, 60 (2d Cir. 1990)); *accord Interstate*

*Mechanical, Inc. v. Glacier Construction Partners, LLC,* No. CV 10-36-M-DWM, 2010

U.S. Dist. LEXIS 46543, *7-*8 (D. Mont May 12, 2010) (unpublished decision) ("The

federal court may exercise its power under 9 U.S.C. § 4 to compel arbitration and

prevent the parties from proceeding in state court under these circumstances."), copy

attached as Exhibit K.

In addition, the Anti-Injunction Act does not preclude the entry of an injunction

against actions by the state judiciary under 42 U.S.C. § 1983, under which this action is

brought.  Phelps v. Hamilton, 59 F.3d 1058, 1064 (10th Cir. 1995) (citing *Mitchum v.*

*Foster,* 407 U.S. 225, 242-43, 32 L. Ed. 2d 705, 92 S. Ct. 2151 (1972)).

**IV.    A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION SHOULD ENTER.**

In order to obtain a temporary restraining order and preliminary injunction,

The Partnership "must show (1) a substantial likelihood that it will ultimately

succeed on the merits of its suit; (2) it is likely to be irreparably injured without an

injunction; (3) this threatened harm outweighs the harm a preliminary injunction

may pose to the opposing party; and, (4) the injunction, if issued, will not adversely affect the public interest."  Flood v. Clearone Communications, Inc., 618 F.3d 1110, 1117 (10th Cir. 2010).  The facts demonstrate that the Partnership meets all those criteria in this case.

### A.    Substantial Likelihood of Success on the Merits.

Where the other requirements for a preliminary injunction are met, "it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation."  Aid for Women v. Foulston, 441 F.3d 1101, 1115 (10th Cir. 2006).  Here, The Partnership comes forward with a mandatory binding arbitration clause, parties who refuse to arbitrate, a state court which is proceeding forward with litigation on arbitrable issues while an appeal is pending, based on a state public policy which is at odds with Congressional intent in enacting the Federal Arbitration Act.

The existence of the valid agreement to arbitrate, alone, is sufficient under the Federal Arbitration Act for this court to compel all arbitrable issues to litigation.  The fact that the policy underlying the state court's decision under state law has been rejected by the United States Supreme Court under the federal law, compare ASC Utah, Inc. v. Wolf Mountain Resorts, L.C., 2010 UT 65, No. 20090059, ___ P.3d ___ (November 19, 2010) with Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 219-21, 105 S. Ct. 1238, 1242-43, 84 L. Ed. 2d 158, 164-65 (1985), makes the issue of preemption substantial.  The fact that the state court continues to move forward while the right to arbitration is on appeal, thereby irreparably damaging

the arbitration right, is substantial. *See McCauley v. Halliburton Energy Services, Inc.,* 413 F.3d 1158, 1160-62 (10th Cir. 2005).  This prong is met.

**B.     Irreparable Injury.**

If trial on the merits of arbitrable claims, involving arbitrable issues, is allowed to proceed, preclusive effect may attach which will impair the arbitrator's ability to fully arbitrate all those same issues.  That harm to The Partnership's right to have those issues arbitrated is irreparable.

**C.     Balance of Harm.**

If The Canyons and Wolf Mountain are forced into arbitration of all arbitration issues which they have hereto fore been litigating between them, there is no harm whatsoever to them.  All that has happened is that they have been forced to abide by their contractual obligation to arbitrate.  That they have previously elected to litigate between themselves is a condition of their own making.  Indeed, The Partnership sought a stay of the litigation over four months ago, yet The Canyons and Wolf Mountain have simply continued forward.  Perhaps they consider the discovery they had available to them in the state court advantageous.  This does not mean they suffered harm by getting this information.  It simply means they will have an advantage most others in the arbitration will not have, i.e., the benefit of broader discovery than they could have obtained in the arbitration.

The Partnership, on the other hand, bargained to have all arbitrable issues arbitrated.  The Canyons and Wolf Mountain also agreed.  If that agreement is

not enfoced by the courts, then The Partnership irrevocably loses a right that Congress and the courts interpreting the Federal Arbitration Act have deemed to be one of the greatest and overriding public policies in America, overcoming judicial hostility to the enforcement of arbitration agreements and requiring their enforcement in the same manner as all other agreements.  The Partnership's loss of this right may never be repaired when preclusive effect will result from the arbitrable issues being subjected to litigation before they are arbitrated.

> ### D.    No Adverse Effect on the Public Interest.

Given the overriding public policy expressed by Congress in enacting the Federal Arbitration Act, no equivalent or greater public policy could be harmed by entering an injunction and ordering arbitration to proceed.

## V.    IMMEDIATE AND EXPEDITED RELIEF IS REQUIRED.

The Partnership filed its motion in the state court **over four months ago**. Nevertheless, the state court has proceeded without any regard for staying proceedings, whether during the pendency of an arbitration or for purposes of any appeal.  A stay on appeal of an order denying a motion to compel arbitration is mandatory under Tenth Circuit precedent absent a certification by the district judge that the appeal is frivolous.  No such certification was entered here and, indeed, none could be.  By proceeding the Third District Court has set on its calendar a March 8, 2011 start date for trial.  To prevent irreparable injury, expedited resolution and granting of a stay is now required.  The Partnership therefore requests that the matter be resolved as soon as possible and in any

event prior to February 25, 2011.

## CONCLUSION

For the foregoing reasons, The Partnership respectfully requests that this court enter an order compelling arbitration of all arbitrable issues and staying all state court proceedings pending the conclusion of the arbitration; and that he court enter a temporaray restraining order and preliminary injunction enjoining the defendants and all those acting in concert with them from proceeding in the state court, in deprivation of the rights guaranteed to The Partnership by the Federal Arbitration Act and the Fourteenth Amendment.

**DATED** this 14th day of February, 2011.

**PETERS | SCOFIELD**
*A Professional Corporation*


/s/ David W. Scofield
DAVID W. SCOFIELD
Attorneys for Plaintiff D.A. Osguthorpe
        Family Partnership

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of the foregoing Motion for Order Compelling Arbitration and to Stay, for a Temporary Restraining Order and Preliminary Injunction and For Expedited Resolution were served by hand-delivery, this 14th day February, 2011, on the following:

John R. Lund
Kara L. Pettit
**SNOW, CHRISTENSEN & MARTINEAU**
10 Exchange Place, 11th Floor
P 0 Box 45000
Salt Lake City, UT 84145-5000
jrl@scmlaw.com
kp@scmlaw.com

Attorneys for Defendant ASC Utah, Inc.

David M. Wahlquist
Rod N. Andreason
Ryan B. Frazier
Joshua Rupp
**KIRTON & MCCONKIE**
1800 Eagle Gate Tower
60 East South Temple
P.O. Box 45120
Salt Lake City, Utah 84145-0120
dwahlgui@kmclaw.com
randreason@kmclaw.com
rfrazier@kmclaw.com
jrupp@kmclaw.com

Attorneys for Defendant Wolf Mountain Resorts, L.C.

Brent M. Johnson
**ADMINISTRATIVE OFFICE OF THE COURTS**
Legal Department
450 South State Street, Third Floor
P.O. Box 140241
Salt Lake City, Utah 84111-0241
brentj@email.utcourts.gov

Attorney for the Third Judicial District Court
        and Judge Robert K. Hilder

/s/ David W. Scofield

27